J^BAGNERIS, Judge.
On August 25, 1994, Albert Skipper, defendant, and co-defendant Anthony Thomas were charged by grand jury indictment with aggravated rape and second degree kidnapping. The admissibility of a statement by Skipper, a photo identification procedure of Thomas, evidence under the La. C.E. art. 412(B) exclusion of the rape shield law and sufficiency of the bill of particulars were considered at motion hearings, which were held on November 14, 1994, December 19, 1994 and January 27,1995.
The trial court determined that Skipper’s statement and the photo identification of Thomas were admissible. The defense motion relative to Article 412(B) was considered withdrawn due to the unavailability of a witness.
The defendants’ cases were severed for trial. On July 25, 1995, Skipper elected a bench trial. At the conclusion of the trial, the court found Skipper guilty of the lesser offense of forcible rape on count one. The court found Skipper guilty as charged on the kidnapping count.
On August 1, 1995, Skipper was sentenced on count one to serve forty years at hard labor without benefit of probation, parole, or suspension of sentence, and on count two to serve ten years at hard labor, to run concurrently with the sentence on count one.[1]
Neither Skipper nor his counsel sought an appeal following sentencing. On | ¡April 29, 1997, the trial court treated an application for post-conviction relief as a motion for out-of-time appeal, granted the appeal and appointed the Louisiana Appellate Project to represent Skipper. The record was lodged with this court.

FACTS

On June 23, 1994, at about 11:00 p.m., the victim accepted a ride with two men she knew from her neighborhood. She had just come out of the convenience store at Tulane and Broad, when the defendant, *874 Albert Skipper, driving a van, offered to take her the two or three blocks to her home. Anthony Thomas and Albert Skipper asked the victim if she would like to take a ride with them. The victim said she would, but that she could not be gone for long. As they drove around uptown, the victim told Skipper to take her home. Skipper responded that she was not going anywhere because she was with “two crooks and two thieves.”
Nevertheless, the victim thought they were taking her home until she saw that they were approaching the Carrollton Avenue ramp onto 1-10. The victim told Skipper they were passing up her house. At that point, Thomas jumped in the backseat, grabbed her and said, “This bitch is trying to get out.” Skipper then drove to an abandoned area, where Thomas ripped off the victim’s clothes and forcibly raped her. The two men then swapped places and Thomas drove while Skipper was in the back with the victim. Skipper then threatened the victim with a knife and “ejaculated (sic) her”. Afterward, Thomas was outside of the van, and Skipper let the victim out of the van.
The victim started to run, but Thomas chased her. Thomas fell on top of the victim and began choking her. Thomas took the victim back to the van and told her he was going to have her “on the rocks.” At that point, the victim ran and then jumped into the nearby swamp. Thomas tried to run through the bushes and go after her, but she went further into •the water. The victim swam until she saw two boats behind a house. It was the next morning when the victim swam up to a house. The victim was naked, muddy and crying hysterically.
The victim ran to the steps of the house, but the woman of the house was afraid to let her in. Rather, she called her husband, and asked him what to do. The husband told his wife to call the police, and that he would come home.
A relative of the husband brought over some clothes for the victim. The couple waited with the victim until the police arrived over two hours later. A police officer then took the victim to Charity Hospital for a sexual assault examination.
The victim wrote “Skip” in mud on the doorpost of the house, which was noticed by the couple, but was washed off before the crime lab technicians could take pictures. The victim stated that she smeared the defendant’s name on the doorpost, so that if her attackers followed her and killed her, there would be some evidence.
The medical exam indicated that the victim had had recent and forceful vaginal penetration. The exam further revealed an abrasion from the rocks. However, there were no indications that the victim was cut with a knife on her leg or that her assailants choked her.
Detective Matthew Riles took the victim home from Charity Hospital after her examination. On the way, the victim recognized the van in which she was assaulted and pointed it out to Detective Riles. The victim further pointed out the home of the person “who raped her.” Detective Riles observed someone get out of the van so he called for assistance. Detective Riles circled the block until [ ¿additional police units arrived.
Detective Riles then knocked on the front door, while the district units went around the back. The victim waited in the police car. A young child answered and said there were no adults at home. In the meantime, the officers in the back of the house radioed Detective Riles that they had apprehended a male exiting from the rear of the house.
When Skipper was taken to the front of the house, the victim became hysterical. The victim then identified Skipper as the man who raped her, and he was placed under arrest. Shortly afterward, an adult female arrived at the address and gave the officers permission to search the house, but they found no evidence.
*875 The police impounded the van identified by the victim, but they did not search it until they could obtain a warrant. The search of the van likewise revealed no relevant evidence. A second warrant was obtained to permit the taking of photographs, as the crime lab technicians were unavailable during the search with the first warrant.
Detective Riles advised Skipper of his rights. Skipper signed the rights of arres-tee form and made a voluntary statement. Skipper also signed the typed statement. Skipper admitted having intercourse with the victim, but stated that it was consensual in exchange for a rock of cocaine. According to Skipper, he had sex with the victim first and then Thomas had sex with her. Skipper also stated that when Thomas wanted to have anal sex, and they had no more rocks of cocaine, the victim “went crazy.” Skipper further stated that Thomas got rough with the victim, “slapped her and maybe choked her, [he thought].”
Skipper stated that Thomas was driving and parked somewhere near the water. The victim got out and jumped into the water. Skipper stated that he told |5her he would take her home, but she kept swimming deeper into the water. Skipper also stated that Thomas threw the victim’s clothes on the road somewhere. Outside of the statement, Skipper told Detective Riles that they used a glass tube with the rock.
The officers searched the following areas for evidence: Skipper’s house, the van, and the area where they believe the offenses occurred. The officers never found the victim’s clothing or shoes, a glass tube, or the knife that the victim alleged that the defendant held on her.
At the trial, the victim denied having used cocaine with Skipper or swapping sex for drugs. She testified that Skipper and Thomas were drinking wine they had bought at the convenience store that evening. The victim denied having seen a glass tube in the van on the night of the offense. The medical examiner did not test the victim for drugs, or alcohol in her system because she did not appear to be intoxicated or under the influence of drugs.
Subsequent to Skipper’s arrest, the victim identified Anthony Thomas from a photographic line-up, as the other assailant in the incident. She also identified Thomas in person at trial.

ERRORS PATENT REVIEW

A review of the record for errors patent reveals that one of Skipper’s sentences is illegally lenient. Each of the offenses for which Skipper was convicted, forcible rape and second degree kidnapping, are punishable by no less than five nor more than forty years at hard labor, at least two years of which shall be without benefit of probation, parole, or suspension of sentence.
The ten-year sentence imposed on Skipper for the second degree kidnapping | ficonviction does not contain the minimum two-year prohibition against probation, parole and suspension of sentence. However, an error favorable to the defendant that is not raised by the State on appeal may not be corrected. State v. Fraser, 484 So.2d 122 (La.1986).

ASSIGNMENT ONE

Skipper contends that the evidence was insufficient to sustain the conviction for the crime of forcible rape. Particularly, Skipper avers that the State failed to prove non-consensual sex with any corroborating physical evidence, and the testimony of the victim failed to sufficiently prove that there was vaginal penetration.
The standard of appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
*876 Skipper noted. that the victim advised the examining physician that she had been raped at knifepoint and by attempted strangulation. The medical testimony indicated that the victim had recent and rough intercourse, but failed to identify either or both of the alleged perpetrators. However, the victim testified that Skipper held the knife to her leg and to her head when he attacked her.
The victim’s testimony that Skipper “ejaculated her” may have been incorrectly recorded, or it may have been the victim’s way of stating that the defendant ejaculated in her. The victim further identified Skipper to Detective Miles as the man who raped her. The trial judge was obviously satisfied that ^Skipper raped the victim.[2]
Moreover, Skipper admitted in his statement that he had intercourse with the victim, but he averred that it was consensual. Lastly, even if Skipper did not penetrate the victim, he was a willing participant and thus a principal, under La. R.S. 14:24, in the rape committed by Thomas. This assignment is without merit.

ASSIGNMENT TWO

By this assignment Skipper argues that the evidence was insufficient to sustain the conviction for second degree kidnapping. Skipper contends that the bill of particulars charged him with second degree kidnapping under La. R.S. 14:44.1(2), (3)and (5). Skipper then argues that the State must prove that the defendant forcibly seized and carried the victim from one place to another and that she was either:
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Sexually abused; or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
Skipper has misread and/or misinterpreted both the statute and the bill of particulars.
La. R.S. 14:44.1, in pertinent part, provides:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
|s(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Skipper’s first argument, that the State must prove that the defendant forcibly seized and carried the victim from one place to another, is incorrect.
The State could and did prove the kidnapping under Sec. B(3), that the defendant imprisoned or forcibly secreted the victim in the van, once she asked to leave. Considering that the defendant was driving when the victim first requested to be let out of the van, and he refused to pull over and let her out, there is no merit to *877 the argument that the defendant is not guilty of kidnapping.
As to the other elements, the State had only to prove that the defendant used the victim to facilitate the commission of a felony, physically or sexually abused her, or imprisoned her while armed with a dangerous weapon or leading the victim to believe he was armed with a dangerous weapon. Skipper committed all of those elements. Skipper participated in the imprisonment of the victim to facilitate his own rape of the victim and Thomas’s rape of the victim. The victim was sexually abused by both men, and cut by Skipper and choked by Thomas. Skipper threatened the victim with a knife.
1 pEven if the medical examination failed to indicate that the victim was cut by the defendant or choked by Thomas, Skipper’s imprisonment of the victim so that both men could rape her is sufficient to sustain the conviction. Therefore, this assignment is without merit.

ASSIGNMENT THREE

By this assignment the appellant argues that the defendant was subjected to double jeopardy by being convicted of both forcible rape and second degree kidnapping. This issue was discussed in State v. Woods, 94-2650 (La.App. 4 Cir. 4/20/95), 654 So.2d 809 writ denied 95-1252 (La.6/30/95), 657 So.2d 1035, as follows:
Both the Louisiana and United States Constitutions prohibit placing a person twice in jeopardy of life or limb for the same offense. United States Constitution, Amendment 5; Louisiana Constitution of 1974, Art. 1, Sect. 15; see also C.Cr.P. art. 596. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court held that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. This test was affirmed by the Court in United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Additionally, Louisiana applies the “same evidence” test, a “broader test” than the federal Block-burger test. State v. Steele, 387 So.2d 1175 (1980); State v. Roy Warner[, 94-2649 (La.App. 4 Cir. 3/16/95), 653 So.2d 577, supra; State v. Smith, 94-0621 (La. App.4th Cir. 12/15/94), 647 So.2d 1321; State v. Williams, 92-2080 (La.App. 4th Cir.12/15/94), 647 So.2d 1244. In order for double jeopardy to occur, the evidence required to support a finding of guilt of one crime must also support conviction of the other, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
In the instant case, the facts proved that Skipper imprisoned the victim, sexually abused her, threatened her with a weapon, and facilitated the sexual and physical abuse by Thomas, making him a principal in those offenses. There are thus several offenses committed by Skipper that could be considered the [ ^underlying offense to support the second degree kidnapping conviction. Accordingly, there was no double jeopardy in convicting Skipper, under these facts, of both forcible rape and second degree kidnapping. This assignment is without merit.

ASSIGNMENT FOUR

Skipper argues that he was deprived of a fair trial because the trial court refused to require the victim to testify at a closed hearing under LSA-C.E. Art. 412(B), which prevented him from questioning the victim at trial regarding her past sexual conduct with him.
LSA-C.E. Art. 412(B) provides the exceptions to the rule that evidence of past sexual behavior of the victim is inadmissible. In this ease, the exception sought by Skipper was for the admission of evidence of the victim’s prior sexual behavior with him, regarding the issue of consent.
*878 LSA-C.E. Art. 412(C) provides for a motion at which the defendant may call witnesses. In the instant case the sheriff was unable to serve the defendant’s witness, who worked offshore. Defense counsel withdrew Skipper as a possible witness. The court then considered the motion withdrawn, reserving Skipper’s right to reinstate the motion, should his witness be located and served. Considering that the defendant was unable to serve his witness, we find no error in the court’s withdrawal of the motion for a 412(B) hearing. Even if there had been error in the court’s refusal to call the victim as a witness in a 412(B) hearing, Skipper was not prejudiced.
At trial, the victim testified that she knew both of her assailants from the neighborhood. She further testified that Skipper once gave her a ride to work, for which she paid him. When asked by the prosecutor if she had ever been out with [neither of the men, she replied that she had not. Thus, the victim’s testimony alone at the motion hearing would not have supported Skipper’s claim that his intercourse with the victim was consensual.
Moreover, considering that the victim wrote Skipper’s name on the doorpost to leave as evidence when she feared for her life, no reasonable trier of fact could believe that only Thomas was guilty of the rape and kidnapping. This assignment is without merit.
Considering the law and the evidence presented, we affirm the defendant’s convictions and sentences.

CONVICTIONS AND SENTENCES AFFIRMED.

. On September 19, 1995, co-defendant Anthony Thomas was tried by a jury, which found him guilty as charged on both counts. On January 26, 1996, Thomas was sentenced on the aggravated rape count to life imprisonment without benefits, and on the second degree kidnapping count to thirty years without benefits as a triple offender. No appeal was ever taken by Thomas.

. Had the defendant ejaculated near her, the victim would likely have said only that he ejaculated, not that he "ejaculated her.”