STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 1192

STATE OF LOUISIANA

VERSUS

KESSLER KING

Judgment Rendered: **SEP 2 0 2024**

\* \* \* \* \*

On Appeal from the
22nd Judicial District Court
Parish of St. Tammany, State of Louisiana
Trial Court No. 592919

The Honorable John A. Keller, Judge Presiding

\* \* \* \* \*

J. Collin Sims                          Attorneys for Appellee,
District Attorney                       State of Louisiana
Matthew Caplan
Assistant District Attorney
Covington, Louisiana


Jane L. Beebe                           Attorney for Defendant-Appellant,
Louisiana Appellate Project             Kessler King
Addis, Louisiana

\* \* \* \* \*

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

Miller, J concurs wrout reason

**WOLFE, J.**

The defendant, Kessler King, was charged by bill of information with second degree kidnapping, a violation of La. R.S. 14:44.1. He initially pled not guilty, but later withdrew that plea and entered a plea of not guilty by reason of insanity. Thereafter, the trial court denied the defendant's motion to suppress his confession. The defendant was tried by a jury and found guilty as charged.[1] The trial court denied the defendant's motion for new trial and motion for post-verdict judgment of acquittal. The trial court imposed a sentence of eighteen years imprisonment at hard labor, suspended five years of the sentence, and placed the defendant on supervised probation for three years, upon his release from imprisonment, with general and special conditions. The defendant now appeals, assigning error to the admission of "prejudicial" evidence, the sufficiency of the evidence, and the denial of his motion to suppress. For the following reasons, we affirm the conviction, vacate the sentence, and remand for resentencing.

## STATEMENT OF FACTS

On August 15, 2017, Gayle Atkins and Lynne Moore were working at the St. Tammany Parish Library in Folsom. Two patrons entered, including the defendant, who went to the computer area and remained there all morning. After Moore went on her lunch break and the other patron left, the defendant asked Atkins to help him find a book. When Atkins walked to the back of the library to show him where the book was located, the defendant grabbed her around her neck and dragged her towards the bathroom, as she screamed for help. The defendant told Atkins to shut up and put his hand over her mouth. She then bit his hand and was able to break free from him.

---

[1] Before the trial, the defendant's attorney filed a motion to test the defendant's mental capacity. The trial court appointed a sanity commission, and the defendant was found competent to proceed to trial.

Moore heard Atkins screaming, assisted her out of the library, and called 911. Officers of the Folsom Police Department responded to the scene and observed the defendant still inside of the library, sitting at a computer desk. The defendant stood up, placed his hands behind his back, and admitted to dragging Atkins to the bathroom. He was then taken into custody.

## SUFFICIENCY OF THE EVIDENCE[2]

In assignment of error number two, the defendant argues the evidence presented at trial only proved a simple kidnapping or an attempted rape, at best, and was insufficient to support the conviction of second degree kidnapping.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La. Code Crim. P. art. 821(B); **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; **State v. Welch**, 2019-0826 (La. App. 1st Cir. 2/21/20), 297 So.3d 23, 27, writ denied, 2020-00554 (La. 9/29/20), 301 So.3d 1193.

The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. **Welch**, 297 So.3d at 27. When a conviction is based on both

---

[2] When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first assess the sufficiency of the evidence. See **State v. Hearold**, 603 So.2d 731, 734 (La. 1992). When the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion of trial error issues as to that crime would be pure dicta since those issues are moot. However, when the entirety of the evidence is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the other assignments of error to determine whether the accused is entitled to a new trial. **State v. Germany**, 2021-1614 (La. App. 1st Cir. 9/26/22), 353 So.3d 804, 809, writ denied, 2022-01568 (La. 1/11/23), 352 So.3d 983. Accordingly, we will first address the issue of the sufficiency of the evidence.

direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **State v. Coleman**, 2021-0870 (La. App. 1st Cir. 4/8/22), 342 So.3d 7, 12, writ denied, 2022-00759 (La. 11/21/23), 373 So.3d 460.

When analyzing circumstantial evidence, La. R.S. 15:438 basically provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Alexander**, 2014-1619 (La. App. 1st Cir. 9/18/15), 182 So.3d 126, 131, writ denied, 2015-1912 (La. 1/25/16), 185 So.3d 748.

Second degree kidnapping is defined, in pertinent part, as the forcible seizing and carrying of any person from one place to another, wherein any of the following acts occur: the victim is used to facilitate the commission of a felony; the victim is physically injured; or, the offender is armed with a dangerous weapon. La. R.S. 14:44.1(A)(2), (A)(3), (A)(5) & (B)(1) (prior to amendment by 2021 La. Acts No. 484, § 1 and 2022 La. Acts No. 173, § 1). As second degree kidnapping is a general intent crime, proof of intent requires only a showing that the circumstances of the crime indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. See La. R.S. 14:10(2); **State v. Dickerson**, 2012-0388

4

(La. App. 1st Cir. 11/2/12), 2012 WL 5387365, *2 (unpublished), <u>writ denied</u>, 2012-2580 (La. 5/3/13), 113 So.3d 209.

At the trial, Atkins testified that, upon the defendant's request, she initially gave him directions to where he could locate a book on deer hunting in the back of the library, upon his request. However, minutes later the defendant returned to the front desk and told her he was unable to find the book, so she proceeded to walk to the back of the library to retrieve the book for him. As she grabbed a book from the shelves, the defendant, who was standing next to her at the time, put his arm around her neck and started dragging her body backwards, towards the bathroom. The defendant continued to drag Atkins, as she tried to fight, pull, and yank herself free. Atkins' shoes came off as the defendant drug and pulled her, and he repeatedly told her to shut up as she yelled for help. She stated the defendant was fondling her breasts while pulling her by the neck. Atkins further testified that during the altercation, the defendant busted her lip and bruised her arms, and she sustained cuts and/or bruises on her hands. The photographs taken of Atkins when the police arrived on the scene showed the bruising and cuts on her lip, arms, and hands, as described in her testimony.

Moore, the library manager, testified the defendant regularly frequented the library, with his father dropping him off. She stated that she did not park in her normal parking spot on the day of the incident and her vehicle was not visible from inside the library. She spent her lunch break in the break room and came out after hearing a peculiar sound. At that point, Atkins ran out from in between the bookstacks and the bathroom and yelled "he's trying to rape me." Moore testified that Atkins did not have any shoes on, her blouse was skewed, and her mouth was puffy. When Moore called 911, she noticed the entrance door near the bathrooms was locked, though it had been unlocked that morning when the library was opened.

5

Officer Jeremy Hutchinson, with the Folsom Police Department, testified that Atkins was frazzled and uncontrollably hysterical when he first arrived on the scene. He observed her lip was cut and bleeding slightly and he took photographs of her injuries. Officer Hutchinson testified zip ties were found on the floor next to the computer at which the defendant was seated. Some of the zip ties were connected in a manner resembling handcuffs. During a pat-down search after the defendant's arrest, a fixed-blade knife was removed from the front right pocket of the defendant's shorts. Officer Hutchinson did not photograph the zip ties or the knife, was unable to locate them, and was unsure if he made any attempt to preserve or place them into evidentiary custody. However, at the trial, Officer Hutchinson drew pictures of the zip ties and knife, and his hand-drawn pictures were introduced as evidence.

After apprehending the defendant, Officer Hutchinson learned he was fifteen years old, and Detective Huey Davis of the St. Tammany Parish Sheriff's Office assisted Officer Hutchinson in an unsuccessful effort to contact a concerned adult for the defendant. The defendant was advised of his rights, executed a waiver of rights form, and participated in a recorded police interview that was played at the trial. Further, the computer at which the defendant sat while in the library was collected and analyzed, and the results indicated the following search was conducted at 10:43 a.m., on the day in question: "How many years in jail for a rape." The offense took place hours later, after Atkins returned from her lunch break.

Dr. Michelle Garriga, an expert forensic psychiatrist, interviewed the defendant prior to trial.[3] Dr. Garriga testified that the defendant told her that he was

---

[3] Dr. Garriga was initially appointed to the sanity commission to determine the defendant's competency to stand trial and later appointed to determine his sanity at the time of the offense. (R. 1, 11, 950, 952). The defendant has not on appeal reasserted his challenge regarding his state of mind at the time of the offense. In an abundance of caution, we note that in addition to the defendant being found competent to stand trial, Dr. Garriga testified that he was capable of distinguishing right from wrong when the offense was committed. After a thorough review of the record, we are convinced a rational trier of fact could have found the defendant failed to rebut his presumed sanity at the time of the offense. See La. R.S. 14:14; La. R.S. 15:432; **State v. Dixon**, 2008-1038 (La. App. 1st Cir. 12/23/08), 2008 WL 6809594, *4 (unpublished), writ denied, 2009-0189 (La. 10/30/09), 21 So.3d 27.

sexually aroused when he attacked Atkins and that he intended to rape her. She also testified that the defendant told her that he knew where the librarians parked their cars and that he thought he and Atkins were alone at the time of the offense.

The defendant testified at trial and said he did not recall telling Dr. Garriga that he was sexually aroused at the time of the offense. However, during his recorded police interview and again at trial, the defendant admitted to kidnapping Atkins, stating that he "made a bad choice." The defendant specifically testified that he put his arm around Atkins and admitted that he dragged her towards the bathroom. The defendant further admitted to using his hand to muzzle Atkins' mouth when she screamed for help and to grabbing her arms where she was bruised. He testified that he could not recall searching the internet for the penalty for rape or fondling Atkins' breasts during the attack, and denied the latter on cross-examination. However, the defendant admitted that he locked a door to the library before the attack. He testified that he did not think that Atkins, Moore, or Dr. Garriga lied at any point during their trial testimony.

The defendant described the knife that he had on his person at the time of his arrest as a four-inch, silver sheath knife with a one-and-a-half to two-inch long blade. The defendant testified he never pulled the knife out from his pocket or threatened Atkins with it. The defendant further denied trying to use the zip ties, but admitted to having them, and admitted they could be used as handcuffs.

When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **Alexander**, 182 So.3d at 131. It is well settled that the trier of fact can accept or reject, in whole or in part, the testimony of any witness. Accordingly, on appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **State v. Lavy**, 2013-1025 (La. App. 1st Cir. 3/11/14), 142

So.3d 1000, 1006, <u>writ denied</u>, 2014-0644 (La. 10/31/14), 152 So.3d 150. Further, a reviewing court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder. <u>See</u> **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*).

On appeal, the defendant does not contest his commission of a kidnapping but argues the State failed to prove Atkins was used to facilitate the commission of a felony, that she was physically injured, or that a dangerous weapon was used during the offense. This court is not persuaded by the defendant's arguments. As detailed below, we find a rational trier of fact could have concluded the defendant committed the kidnapping to facilitate the commission of a felony, attempted third degree rape, that Atkins was physically injured during the kidnapping, and/or the kidnapping was committed when the defendant was armed with a dangerous weapon.

### *To Facilitate the Commission of a Felony, Attempted Third Degree Rape*

Louisiana Revised Statutes 14:41(A) in part defines rape as "the act of . . . sexual intercourse with a . . . person committed without the person's lawful consent." Louisiana Revised Statutes 14:43(A)(4) pertinently defines third degree rape as "a rape committed when the . . . sexual intercourse [occurs] . . . without the consent of the victim[.]" An attempt is defined by La. R.S. 14:27(A) as "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended." It is immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A).

Specific intent is therefore a required element for a conviction of attempted third degree rape. Specific intent is defined by La. R.S. 14:10(1) as "that state of mind which exists when the circumstances indicate that the offender actively desired

the prescribed criminal consequences to follow his act or failure to act." Specific intent need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. Thus, to show an attempted third degree rape, the State had to prove beyond a reasonable doubt the defendant: (1) had the specific intent to commit third degree rape; and (2) he did an act for the purpose of, and tending directly toward, the accomplishing of his objective. See La. R.S. 14:43 and La. R.S. 14:27; see also **State v. Walston**, 2022-0317 (La. App. 1st Cir. 11/4/22), 2022 WL 16707997, *2 (unpublished), writ denied, 2022-01809 (La. 9/19/23), 370 So.3d 464.

Herein, testimony showed the defendant searched a library computer regarding the penalty for rape, waited until it appeared he was alone with Atkins, locked the library door, fondled Atkins' breasts while dragging her to the bathroom, and told Dr. Garriga that he was sexually aroused at the time of the offense and intended to rape Atkins. The State presented ample evidence from which the jury could infer the defendant had the specific intent to rape Atkins and committed several acts in furtherance of that objective. Accordingly, we find that the jury could have rationally concluded the State proved beyond a reasonable doubt the kidnapping was committed to facilitate an attempted third degree rape. See **State v. Skipper**, 97-2209 (La. App. 4th Cir. 5/5/99), 737 So.2d 872, 877 (wherein the appellate court, in part, upheld a conviction of second degree kidnapping based on evidence that the defendant "participated in the imprisonment of the victim to facilitate his own rape of the victim").

We note that the defendant on appeal contends that the State was required to show the commission of a completed felony to prove second degree kidnapping under La. R.S. 14:44.1(A)(2). However, the State notes that "attempted rape is itself a felony offense." We agree with the State. Louisiana Revised Statutes 14:2(4) defines a felony as "any crime for which an offender may be sentenced to death or

9

imprisonment at hard labor." Third degree rape is punishable by imprisonment at hard labor, and thus it is a felony. See La. R.S. 14:43(B). Louisiana Revised Statutes 14:27 defines "attempt," and provides in subparagraph (D)(3) that whoever attempts to commit a crime, "shall be fined or imprisoned or both, in the same manner as for the offense attempted[.]" Thus, attempted third degree rape is a felony because it is punishable by imprisonment at hard labor.

Moreover, as discussed below, we find the jury could have also rationally concluded the State proved the elements of the offense under subsections (3) and (5) of La. R.S. 14:44.1(A). Thus, in this case, we need not rely solely on our determination of whether the use of the victim to commit an attempted felony offense meets the definition of second degree kidnapping pursuant to the discussed portion of La. R.S. 14:44.1(A)(2).

### *Wherein the Victim is Physically Injured*

As the defendant concedes on appeal, La. R.S. 14:44.1(A)(3) does not require the victim's physical injury be serious. In addition to Atkins' testimony, photographs of her injuries were admitted into evidence and shown to the jury. The defendant admitted to inflicting injuries to Atkins' lip, arms, and hands, specifically the bruises and cuts shown in the photographs. See **Dickerson**, 2012 WL 5387365 at *2-4 (wherein the victim suffered bruising injuries to her left eye, her nose, her mouth, and her back right shoulder during a kidnapping and this court upheld the conviction of second degree kidnaping). Thus, the jury could have rationally determined that Atkins was physically injured by the defendant during the commission of the kidnapping.

### *When the Offender is Armed with a Dangerous Weapon*

The defendant admitted to having a dangerous weapon, a knife, at the time of the offense. A "dangerous weapon" includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death

or great bodily harm. La. R.S. 14:2(A)(3). The term is not limited to instrumentalities which are inherently dangerous. See La. R.S. 14:2, Reporter's Comments-1950; **State v. Bonier**, 367 So.2d 824, 826 (La. 1979). Despite the defendant's claim on appeal, La. R.S. 14:44.1(A)(5) does not require that the weapon be used or brandished during the commission of the offense. Rather, it requires the offender, at the time of the kidnapping, "is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon." La. R.S. 14:44.1(A)(5). In **State v. Hearne**, 55,311 (La. App. 2d Cir. 9/27/23), 373 So.3d 101, 105, the defendant argued a pocketknife in his pants pocket was insufficient to show he was "armed" at the time of the offense. The appellate court concluded that for the purposes of aggravated burglary, as defined in La. R.S. 14:60, a burglar only needs to have a dangerous weapon in his possession in order to be considered "armed[.]" **Hearne**, 373 So.3d at 106. Similarly, we find that a kidnapper need only possess a dangerous weapon at the time of the offense to be considered "armed" for purposes of La. R.S. 14:44.1(A)(5). Thus, the jury could have rationally determined the defendant was armed with a dangerous weapon during the commission of the kidnapping.

In reviewing the evidence presented at trial, we cannot say that the jury's determination was irrational under the facts and circumstances presented. See **Ordodi**, 946 So.2d at 662. After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence in the light most favorable to the State, could find that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree kidnapping. Thus, we find no merit in assignment of error number two.

### ADMISSION OF EVIDENCE

In assignment of error number one, the defendant argues the trial court erred in allowing the State to present evidence of the knife, zip ties, and computer search.

11

He argues the evidence was not relevant to the offense, was prejudicial but not probative, and consisted of evidence of other crimes or bad acts.

Evidence of other crimes, wrongs, or acts committed by the defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant. It is well settled that courts may not admit evidence of other crimes to show the defendant as a person of bad character who has acted in conformity with his bad character. **State v. Calloway**, 2018-1396 (La. App. 1st Cir. 4/12/19), 276 So.3d 133, 147, writ denied, 2019-00869 (La. 1/20/21), 308 So.3d 1164. However, under La. Code Evid. art. 404(B)(1), such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. At least one of the enumerated purposes in Article 404(B) must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible under Article 404. **State v. Selders**, 2019-0777 (La. App. 1st Cir. 12/27/19), 293 So.3d 1170, 1176, writ denied, 2020-00194 (La. 7/24/20), 299 So.3d 69. Thus, even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. The State bears the burden of proving that the defendant committed the other crimes, wrongs, or acts. **Calloway**, 276 So.3d at 147.

Other Crimes evidence is admissible under the integral act exception (formerly known as *res gestae*) when the evidence relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. Thus, evidence forms part of the *res gestae* when the crime is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to the other crime. The *res gestae* doctrine in

12

Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime, if a continuous chain of events is evident under the circumstances. Integral act evidence in Louisiana incorporates a rule of narrative completeness without which the State's case would lose its narrative momentum and cohesiveness. **Calloway**, 276 So.3d at 147.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. Code Evid. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. La. Code Evid. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, risk of misleading the jury, or by considerations of undue delay or waste of time. La. Code Evid. art. 403.[4] Ultimately, questions of relevancy and admissibility are discretionary calls for the trial court, and its determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. **State v. Phillips**, 2023-0243 (La. App. 1st Cir. 9/28/23), 376 So.3d 880, 889.

Prior to the trial, the defendant moved to prohibit the State from introducing the evidence at issue. Following a hearing, the trial court agreed with the State's argument that the evidence was relevant and denied the defendant's motions. As

---

[4] We note that pertinent jurisprudence questions whether integral act evidence under La. Code Evid. art. 404(B) remains subject to the balancing test of La. Code Evid. art. 403. **State v. Taylor**, 2001-1638 (La. 1/14/03), 838 So.2d 729, 745, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004). However, we find that the prejudicial effect of the evidence admitted in this case does not substantially outweigh its probative value. Thus, we need not decide whether integral act evidence presented under the authority of La. Code Evid. art. 404(B) must invariably pass the balancing test of Article 403. See **Taylor**, 838 So.2d at 745.

follows, we find that the related testimony and drawings of the zip ties and knife, and the evidence regarding the defendant's computer search were introduced as evidence of the instant offense, not a separate "other crime" within the meaning of Article 404(B). See **Calloway**, 276 So.3d at 148.

Testimony at trial showed the defendant conducted the computer search regarding the penalty for rape while at the library, just hours before he committed the offense. The zip ties, which the defendant admitted could be used as handcuffs, were observed by Officer Hutchinson after he approached the defendant sitting at a library computer, just after the offense. Finally, the knife was found on the defendant's person at the scene, during his arrest. As discussed in the context of the sufficiency of the evidence, under La. R.S. 14:44.1(A)(2), (3), and (5), the State introduced evidence to prove the defendant kidnapped Atkins to facilitate the commission of attempted rape, physically injured her while doing so, and was armed with a dangerous weapon at the time. Thus, the challenged evidence was introduced to prove elements of the instant offense. Further, the evidence had independent relevance to the issues of motive, intent, preparation, plan, and knowledge.[5] As such, the State established an independent reason for admission of the evidence at issue. Finally, we find that the evidence constitutes an integral part of the act that is the subject of the present proceeding, as provided for by La. Code Evid. art. 404(B)(1). The evidence forms an inseparable link in the continuous chain of events leading to the defendant's arrest for the instant charged offense. Accordingly, the contested evidence was necessary to complete the story of the crime on trial and allow the State to accurately present its case. See **Calloway**, 276 So.3d at 148.

---

[5] As the State notes on appeal, the evidence at issue was also relevant to the defendant's plea of not guilty and not guilty by reason of insanity, requiring the jury to determine whether he was capable of distinguishing between right and wrong at the time of the offense.

14

Considering the highly probative value of the evidence, the relevancy of the evidence was not outweighed by any danger of unfair prejudice, confusion, misleading the jury, undue delay, or waste of time. We find no abuse of discretion in the trial court's rulings finding the evidence admissible. Accordingly, assignment of error number one lacks merit.

## MOTION TO SUPPRESS CONFESSION

In assignment of error number three, the defendant argues the trial court erred in denying the motion to suppress his confession. He notes he was only fifteen years old at the time of the offense and argues the police could have waited to interview him in the presence of his father.

Louisiana Code of Criminal Procedure article 703(D) provides that, on the trial of a motion to suppress, the burden is on the defendant to prove the ground of his motion, except the State shall have the burden of proving the admissibility of a purported confession or statement by the defendant. Before a purported confession can be introduced in evidence, it must be affirmatively shown that the statement was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451. Prior to questioning, an individual must be advised of his right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. See **Miranda v. Arizona**, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Further, if in any manner and at any stage of the process, the individual wishes to consult with an attorney before speaking, questioning must cease. **Id.**, 384 U.S. at 444-45, 86 S.Ct. at 1612. The confession of an accused of any age is valid if it was given knowingly and voluntarily. **State v. Fernandez**, 96-2719 (La. 4/14/98), 712 So.2d 485, 487.

15

In **Fernandez**, the Louisiana Supreme Court overruled **State in the Interest of Dino**, 359 So.2d 586 (La.), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), which had previously mandated that, in order to introduce a juvenile's confession, the State must affirmatively show the juvenile engaged in a meaningful consultation with an attorney or informed parent, guardian, or other adult interested in his welfare before he waived his right to counsel and privilege against self-incrimination. **Dino**, 359 So.2d at 594. The **Fernandez** court reinstated the totality of the circumstances standard as the basis for determining the admissibility of juvenile confessions. Thus, all of the facts and circumstances must be reviewed to determine whether a juvenile's confession was freely given. **Fernandez**, 712 So.2d at 489-90.

Among the factors to be considered in determining the admissibility of a juvenile's confession are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult. The special needs of juveniles are analogous to the special needs of individuals with mental deficiencies and are factors to be considered. The waiver of the defendant's constitutional rights in making a confession or statement does not require a higher level of mental capacity than his level of competency to enter a plea of guilty, to assist counsel at trial, to waive his right to an attorney, or to waive other constitutional rights. The testimony of a police officer alone can be sufficient to prove the juvenile's statements were freely and voluntarily given. **State v. Robinson**, 2016-1594 (La. App. 1st Cir. 6/2/17), 2017 WL 2399362, *3 (unpublished), writ denied, 2017-1241 (La. 4/27/18), 241 So.3d 305.

When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion, i.e., unless the ruling is not supported by reliable evidence. See **State v. Green**, 94-0887 (La. 5/22/95), 655 So.2d 272, 281. However, a trial court's

legal findings are subject to a *de novo* standard of review. See **State v. Hunt**, 2009-1589 (La. 12/1/09), 25 So.3d 746, 751.

In the instant case, Detective Davis interviewed the defendant and testified at the motion to suppress hearing. He noted that Officer Hutchinson contacted him regarding the defendant and brought the defendant to the Sheriff's Office where the interview took place. Detective Davis was familiar with the defendant and was aware the defendant was a victim in an unrelated prior offense. He noted the defendant's educational challenges but that he was "very street smart" and internet savvy. Detective Davis noted that he made several attempts to contact the defendant's father before the interview and stated that the defendant seemed to understand the rights that were explained to him prior to questioning. The interview lasted approximately twenty-four minutes. After reviewing the interview, the trial court noted Detective Davis thoroughly explained the situation to the defendant and had him acknowledge that he understood his rights. Based on their interaction, the trial court concluded that the defendant understood his rights and waived them intelligently.

The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. The trial court must consider the totality of the circumstances in deciding whether a confession is admissible. Once the trial court has determined that the State has met its burden of proof with respect to voluntariness of the confession, its decision is entitled to great weight on review. **Robinson**, 2017 WL 2399362 at \*3.

17

We find that the record fully supports the trial court's denial of the motion to suppress in this case. At the beginning of the interview, Detective Davis informed the defendant that he made several attempts to contact his father, and that he had spoken to his aunt but she declined or was unable to attend the interview. Detective Davis asked the defendant if he knew of any other family that he could try to contact, and the defendant indicated that he did not know of anyone else to call. Detective Davis then carefully explained the defendant's rights, using plain, simple language. For example, in explaining the right to remain silent, Detective Davis added, "you don't have to talk to me." He then told the defendant, in further explaining his privilege against self-incrimination, "if you tell me something . . . and a crime is involved, you can get in trouble." Detective Davis repeatedly reminded the defendant that if he decided to start the conversation, he could stop at any time, or could request an attorney. The defendant, in reading along as his rights were given, stopped the detective to confirm that an attorney would be appointed if he could not afford one.

The defendant was fully informed of his rights, confirmed that he understood his rights, and signed a waiver of rights form. There was no indication that the defendant's state of mind was altered or that he felt threatened or coerced. Further, as stated, there is no absolute requirement that an attorney or guardian be present with a juvenile suspect at the time he makes the statement. **State in Interest of C.H.**, 2015-1024 (La. App. 1st Cir. 11/6/15), 183 So.3d 567, 571. Considering the totality of the circumstances, the trial court did not err or abuse its discretion in denying the motion to suppress the statement. Thus, we find that assignment of error number three lacks merit.

## PATENT ERROR REVIEW

On appeal, this court routinely reviews the record for error patent. Pursuant to La. Code Crim. P. art. 920(2), in conducting a patent error review, this court shall

consider "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."

As the State notes in its brief, the sentence is illegally lenient, requiring that it be vacated and the case remanded for resentencing.[6] Specifically, the trial court suspended a portion of the defendant's sentence, contrary to the prohibition in La. Code Crim. P. art. 893(A) (prior to amendment by 2017 La. Acts No. 280, § 1; effective November 1, 2017) against doing so for an offense designated in the court minutes as a crime of violence. See also La. R.S. 14:2(B)(16). A defendant in a criminal case does not have a constitutional or statutory right to an illegal sentence. See **State v. Williams**, 2000-1725 (La. 11/28/01), 800 So.2d 790, 797; **State v. Gregoire**, 2013-0751 (La. App. 1st Cir. 3/21/14), 143 So.3d 503, 510, writ denied, 2014-0686 (La. 10/31/14), 152 So.3d 151.

An appellate court is authorized to correct an illegal sentence pursuant to La. Code Crim. P. art. 882(A), when the sentence does not involve the exercise of sentencing discretion by the trial court. The sentencing herein, however, involves discretion. See La. R.S. 14:44.1(C). To the extent that amending the defendant's sentence entails more than a ministerial correction of a sentencing error, a *sua sponte* correction by a court of appeal is not sanctioned by the jurisprudence. See **State v. Haynes**, 2004-1893 (La. 12/10/04), 889 So.2d 224 (*per curiam*); **State v. Gross**, 2016-1168 (La. App. 1st Cir. 4/18/17), 218 So.3d 1089, 1099. Thus, we vacate the sentence and remand for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**

---

[6] At the sentencing, the State noticed its intent to take a writ on the issue of the partial suspension of the defendant's sentence. However, there is no indication that the State filed a writ on the matter.